UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

THE WEITZ COMPANY, LLC,  :  Case No. 1:12-cv-855
          :
   Plaintiff,     :  Judge Timothy S. Black
vs.         :
          :
ACUITY, a Mutual Insurance  :
Company,       :
          :
   Defendant.    :

**ORDER: (1) GRANTING DEFENDANT ACUITY'S MOTION
FOR SUMMARY JUDGMENT (Doc. 151); and (2) DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT AGAINST ACUITY (Doc. 146)**

This civil action is before the Court on: (1) Defendant Acuity's motion for

summary judgment (Doc. 151); (2) Plaintiff's motion for summary judgment against

Acuity (Doc. 146), and the parties' responsive memoranda (Docs. 156, 158, 159, 160,

162).

This action for declaratory judgment was filed by Weitz against various insurer

defendants. Weitz seeks a declaration that it is an additional insured under Acuity and

other insurers' policies for claims arising in a separate action filed against it by Twin

Lakes at Montgomery. (Doc. 112).[1] Weitz claims that it is an additional insured, it was

entitled to a defense and indemnity by Acuity and others against the claims asserted by

Twin Lakes, and that as a result of the Defendants' breach of their duty to defend, it is

entitled to damages. Additionally, Weitz seeks its attorneys' fees and full

---

[1] Weitz initially sought a declaration of rights and obligations with respect to its defense and indemnification under policies issued by multiple defendant insurance companies. However, these allegations have all been resolved and Acuity is the only remaining defendant.

indemnification for the defense of the underlying arbitration (*Twin Lakes v. The Weitz Co., LLC*, American Arbitration Association Case No., 01-14-0000-6898) as a result of the alleged breach of contract.

Acuity claims that it had no duty to defend and indemnify Weitz against the claims of Twin Lakes, and, even if it did, the damages Weitz seeks are unrecoverable under Ohio law.

## I. BACKGROUND FACTS

### A. Acuity Policy No. K29966

Acuity issued a commercial general liability ("GCL") policy, Policy No. K29966, to its named insured Miter Masonry Contractors, Inc. with a policy period of July 1, 2010 to July 1, 2011 ("the Policy"). (Doc. 151-1). As with most CGL policies, the Policy generally provides insurance coverage for Miter Masonry for claims of property damage caused by an "occurrence." (*Id.* at 1).

Weitz contends that it is entitled to "additional insured" coverage under Policy No. K29966. (Doc 112 at ¶ 24). With respect to additional insured contractual endorsements, Policy No. K29966 provides, in relevant part:

1. Section II – Who Is An Insured is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy.

    Such person or organization is an additional insured only with respect to liability included for bodily injury, property damage, or personal and advertising injury caused, in whole or in part, by:

a. Your acts or omissions; or

b. The acts or omissions of those acting on your behalf;
in the performance of your ongoing operations for the additional insured.

A person or organization's status as an additional insured under this endorsement ends when your operations for that additional insured are completed.

(Doc. 151-1 at CG-7194 (5-05)).

Acuity's policy with Miter also contains an "Additional Insured – Completed

Operations" endorsement, which provides in relevant part:

1. Section II – Who Is An Insured is amended to include as an additional insured any person(s) or organization(s) for whom you have performed operations if you and such person(s) or organization(s) have agreed in writing in a contract or agreement that such person(s) or organization(s) be added as an additional insured on your policy for completed operations.

   Such person or organization is an additional insured only with respect to liability included in the products-completed operations hazard[2] for bodily injury or property damage caused, in whole or in part, by your work performed for that additional insured at the location designated and described in the contract or agreement.

2. This insurance does not apply to:

    b. Bodily injury or property damage that occurs after the time period during which the contract or agreement described in item 1 requires you to add such person or organization onto your policy as an additional insured for completed operations; or …

(*Id.* at CG-7274 (5-05)).

---

[2] "Products-completed operations hazard" is defined in the Policy to include "all bodily injury and property damage occurring away from premises you own or rent and arising out of your product or your work"- except work that has not yet been completed or abandoned.  (Doc. 151-1 at 14).

3

### B.   Underlying Dispute and Arbitration Proceedings

The underlying case involves a construction project in which Weitz and Twin Lakes entered into a construction contract for the construction of a residential community in Montgomery, Ohio. (Doc 112 at ¶ 15). While Weitz served as the general contractor, it hired several subcontractors to perform work, including Acuity's insured, Miter Masonry. (*Id*. at ¶ 16). Weitz alleges that it and its subcontractors began work on the Project in 2002 and substantially completed work in or around 2005. (*Id*. at ¶ 40). On June 30, 2011, Twin Lakes notified Weitz by letter that it had become aware of moisture infiltration issues at the Project, and that preliminary observations indicated that the water infiltration may be related to improper work during the Project ("the Twin Lakes claims"). (*Id*. at ¶ 42).

Twin Lakes filed a Demand for Arbitration against Weitz on November 30, 2012. (Doc 146-10). In its Demand for Arbitration, Twin Lakes alleged that on January 9, 2003, it entered into a contract with Weitz for Weitz to serve as the construction manager for the construction of the Twin Lakes Retirement Community Project. (*Id.*) Twin Lakes alleged that:

> Weitz, and by and through its subcontractors, defectively constructed the villa patio units resulting in significant moisture intrusion and damage to the units. The defects include, but are not limited to, the building wrap, windows, doors, wood trim, aluminum wrap, vinyl siding, flashing and brick veneer not being installed in accordance with Contract Documents and/or industry standards.

4

(*Id.*)  Later, in a Statement of Claims, Twin Lakes confirmed that it was alleging "claims for breach of contract, breach of warranty and negligence against the Respondent, the Weitz Company, LLC." (Doc. 146-11).

The arbitration resulted in a Modified Final Award dated June 4, 2015.  (Doc. 146-12).  The Arbitration Panel awarded total damages to Twin Lakes and against Weitz in the amount of $2,775,771.86.  (*Id.* at 9, ¶ 35).  Specifically, the Panel determined that Weitz "breached each of these sections of the Contract and Weitz's breach of Contract caused the moisture intrusion and the resulting moisture damage to the all of the units." (*Id.* at 3, ¶ 7).

The Panel indicated that Weitz sought full indemnification from its subcontractors of any amounts awarded in favor of Twin Lakes "and also seeks to recover its attorney fees from the Subcontractors based on the provisions of the Subcontracts."  (Doc. 146-12 at 10, ¶ 36).  The Panel noted that none of the Subcontractors assumed Weitz's defense, and Weitz incurred costs for consultants, attorney fees, attorney and consultant travel expenses, and Arbitration expenses (the "Weitz Expenses").  (*Id.* at 11, ¶ 47).

In the arbitration, the Subcontractors argued that Weitz retained its own duties to supervise the work, that Weitz could not delegate 100% of the responsibility to the other Respondent Subcontractors, and that had Weitz not failed its own, non-delegable duties of supervision, much of the defective construction would have been avoided and/or corrected and much of the resulting damage averted.  (Doc. 146-12 at 12, ¶ 49). However, the Panel determined that the Respondent Subcontractors offered no persuasive

evidence of what Weitz's proportionate share of responsibility should be.  (*Id.*)

Therefore, the Panel held that Weitz was entitled to recover from the Subcontractors

100% of the $2,775,771.86 awarded to Twin Lakes.  Acuity's insured, Miter Masonry,

was determined to be 4% at fault for the damages.  (*Id.* at 12, ¶ 50).  The Panel also

awarded Weitz its attorney fees in connection with the arbitration, expenses, and

arbitration costs.  (*Id.* at 13-14).  Finally, the Panel held that "[t]his Award is in full

settlement of all claims and defenses submitted in this Arbitration.  All claims and

damages not specifically addressed in this Award are denied."  (*Id.* at 14).

Weitz moves the Court for summary judgment against Acuity on its declaratory

judgment claim that Acuity owed Weitz a defense in the arbitration.  Acuity claims that

Weitz is not entitled to additional insured coverage and therefore it is entitled to summary

judgment.

## II.    STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to

the Court demonstrates that there is no genuine issue as to any material fact, and that the

movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  *See Celotex

Corp. v. Catrett*, 477 U.S. 317, 322 (1986);  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 247-48 (1986).  The moving party has the burden of showing the absence of genuine

disputes over facts which, under the substantive law governing the issue, might affect the

outcome of the action.  *Celotex*, 477 U.S. at 323.  All facts and inferences must be

construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (1986).

## III.   ANALYSIS

### A.   Coverage for Weitz Under Acuity's Policy (Count I)

#### 1.   *Time Limits*

Acuity's corporate representative acknowledged that the construction of the 112 patio villa units was phased, and that individual units were being finished between approximately November 18, 2003 and July 28, 2005. (Doc. 147 at 71; Doc. 146-12 at ¶ 5) ("Weitz constructed the Project in multiple phases from approximately mid-2002 through 2005."). Weitz maintains that the Project Owner alleged that, as the units were being completed during this time frame, ongoing water intrusions from the time of original work completion and thereafter caused resultant damage to other work. However, Weitz does not cite to any evidence supporting this allegation. In fact, Weitz concedes that the very first time it was provided with any notice of property damage on the Twin Lakes premises was on June 30, 2011. (Doc. 112 at ¶ 42). Additionally, the President of LEC Foundation/Twin Lakes, Scott McQuinn, testified that Twin Lakes first noticed the water intrusion in May or June 2011, when residents began to complain about water in their units after the rain. (Doc. 160-1 at 13, 40-41).

Regardless of which policy applies (Weitz claims that the 2002-2005 policies apply, while Acuity claims that the 2010-2011 policy applies), the result is the same, because all of the policies contain a limitation on additional insured status for completed operations, and provide that the insurance does not apply to:

> b.    Bodily injury or property damage that occurs after the time period during which the contract or agreement described in item 1 requires you to add such person or organization onto your policy as an additional insured for completed operations; or…

(Doc. 151-1, Ex. A; Doc. 146-13, 146-14, 146-15).

Weitz's claims for additional insured coverage fail because there is no evidence that the alleged property damage occurred within the time limit specified in Acuity's policy. The subcontract between Weitz and Miter, requires the Subcontractor (Miter) to obtain and maintain insurance as required by the Prime Contract, or if greater shall provide the following minimum insurance:

> 4.1.1 *Comprehensive General Liability*
> These limits can be met by primary and umbrella liability policies ….such coverage shall be endorsed for the general aggregate to be on a **PER PROJECT** basis, and such endorsement shall be noted on the certificate. Subcontractor shall continue this coverage for at least two (2) years following final payment to Contractor in connection with the Project or longer if required by the Prime Contract….

(Doc. 146-3).

Pursuant to the contract, Miter was required to continue general liability coverage for at least two years following final payment to Weitz. The "Additional Insured – Completed Operations" endorsement does not apply to property damage occurring after

8

two years following final payment to the Contractor in connection with the Project. Final payment to Weitz was on or about July 31, 2005, around the time when the parties achieved substantial completion of the Project. (Doc. 150 at 118–19, 179-80). There is absolutely no evidence in the record that the alleged property damage occurred before the expiration of the two-year period. In fact, the first notice to Weitz of the property damage was June 30, 2011, five years after final payment. (Doc 112 at ¶ 42). Accordingly, Weitz is not entitled to additional insured coverage, and Acuity had no duty to defend and/or indemnify Weitz for the Twin Lakes claims.

### 2. *Property Damage Caused by an Occurrence*

In order for coverage to be triggered under Acuity's policy, the alleged "property damage" must be the result of an "occurrence," which is defined in the policy as an "accident." The term "accident" is not defined in the policy. (Doc. 151-1 at 14).

The Arbitration Panel specifically found that Weitz failed to perform in a workmanlike manner. (Doc 146-12 at ¶¶ 8-17). The Panel further found that Weitz breached its contract with Twin Lakes, and Weitz's breach of contract caused the moisture intrusion and the resulting moisture damage to all of the units. (*Id.* at ¶ 7). The claims of defective construction or workmanship brought by a property owner are not claims for "property damage" caused by an "occurrence" under a commercial general liability policy. *Westfield Ins. Co. v. Customer Agri Sys., Inc.,* 979 N.E.2d 269 (Ohio 2012). *Westfield* was before the court on the certification of state law questions from the Sixth Circuit. The insured, Custom Agri Systems, Inc., was sued under two general

9

theories: defective construction and consequential damages resulting from defective construction. The insurer, Westfield Insurance Company, argued that none of the claims against Custom sought compensation for "property damage" caused by an "occurrence" and, therefore, none of the claims were covered under the CGL policy. *Id*. at 270. The property owner in the case, PSD Development, alleged that it had sustained damages as a result of defects in a steel grain bin which had been constructed by Custom. *Id*. In turn, Custom filed third party complaints against the subcontractors it used to construct the bin and demanded Westfield defend and indemnify it in the litigation. *Id*.

Like Acuity's insurance policy in this case, the policy in *Westfield* defined "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." 979 N.E.2d at 273. The term "accident" was not defined in the policy. *Id*. The Supreme Court of Ohio gave the term its natural and commonly accepted meaning and interpreted "accident" to mean "fortuitous" and concluded that claims for faulty workmanship are not fortuitous in the context of a CGL policy, and "in keeping with the spirit of fortuity that is fundamental to insurance coverage, we hold that the CGL policy does not provide coverage to Custom for its alleged defective construction of workmanship on the steel grain bin." *Id*. at 274.

Here, the Panel found that Weitz failed to perform in a workmanlike manner. (Doc. 146-12 at ¶¶ 8-17). The Panel also found that Weitz breached its contract with Twin Lakes, and that Weitz's breach of contract caused the moisture intrusion and the resulting moisture damage to all of the units. (*Id.* at ¶ 7). These claims cannot be

considered a fortuitous accident, since neither the claims for faulty workmanship nor breach of contract are claims for "property damage" caused by an "occurrence." Accordingly, there is no coverage for Weitz's claims under Acuity's CGL policy.

Therefore, for these two separate and independent reasons, Plaintiff's claim for declaratory judgment (Count I) fails as a matter of law.

### B.    Damages for Breach of Contract (Count II)

Even if the Court found that Acuity breached a duty to defend Weitz as an additional insured, the damages Weitz seeks are not recoverable under Ohio law.  Weitz's damages can be grouped into two categories: (1) attorney fees incurred in connection with prosecuting this declaratory judgment action; and (2) unreimbursed costs and expenses associated with the arbitration.

#### 1.    *Attorney Fees*

Weitz requests "legal fees that [it] has incurred and continues to incur to enforce the Defendants' policies, which represents compensable damages flowing from the breach of the policy covenant to defend."  (Doc. 112 at ¶ 84).

The Final Award in the arbitration provided that Weitz was entitled, (and ultimately did recover), all of its attorney fees associated with defending the arbitration. The Panel specifically found that Weitz incurred $438,965.26 in attorney's fees in connection with the arbitration, and the Panel awarded those fees to Weitz as part of its damages against the subcontractors.  (Doc 146-12 at ¶ 51).  These damages were, in turn, paid by the subcontractors' insurance carriers on behalf of their insureds, including

Acuity.  Now, Weitz claims that it is entitled to recover extra costs of litigation above and beyond that awarded in the Modified Final Award under a breach of contract theory.

Federal courts generally apply state law when deciding whether to award attorney fees on state law claims.  *Shimman v. Int'l Union of Op. Engrs. Local 18*, 744 F.2d 1226, 1237 n.17 (6th Cir. 1984).  "Ohio has long adhered to the 'American Rule' with respect to the recovery of attorney fees: a prevailing party in a civil action may not recover attorney fees as part of the costs of litigation."  *Wilborn v. Bank One Corp.,* 906 N.E.2d 396, 400 (Ohio 2009).  Exceptions to the rule allow for recovery "when a statute or an enforceable contract specifically provides for the losing party to pay the prevailing party's attorney fees, or when the prevailing party demonstrates bad faith on the part of the unsuccessful litigant."  *Id.*  There is no applicable exception to the American Rule in this case.

First, there are no allegations of bad faith against Acuity.  Further, there is no contractual authority for the recovery of attorney fees in pursuing Weitz's declaratory judgment.  Similarly, there is no statutory authority for the recovery of attorney fees for Weitz's declaratory judgment action.  In fact, in 1999, in order to perpetuate adherence to the American Rule, the General Assembly enacted Ohio Revised Code Section 2721.16. *See MacDonald v. Webb Ins. Agency*, Inc., 49 N.E.3d 807, 812 (Ohio App. 2015).  Under Ohio Revised Code Section 2721.16(A)(1), a Court shall not award attorney fees to "any party on a claim or proceeding for declaratory relief."

Since Weitz has recovered all of its attorney fees in connection with defending the arbitration, its claim for attorney fees consists entirely of fees accrued in connection with its pursuit of declaratory relief against the various Defendants concerning coverage. By application of the American Rule, Weitz is responsible for these fees unless a statute or contract provides otherwise. *MacDonald*, 49 N.E.3d at 812. Since there is no statutory or contractual authority permitting the award of attorney fees in pursuing this declaratory judgment action, Weitz's claim for fees is barred as a matter of law.

### 2. *Costs and Expenses from Arbitration*

As damages for its breach of contract claim, Weitz claims that it is "entitled to reimbursement of all costs and expenses that it directly or indirectly incurred and continues to incur to investigate and defend the claims and to pass claims through to the responsible parties, all of which should have been paid for by the Defendants." (Doc. 112 at ¶ 75). Acuity claims that these damages are barred by the doctrine of *res judicata*.

"The doctrine of *res judicata* involves both claim preclusion (historically called estoppel by judgment in Ohio) and issue preclusion (traditionally known as collateral estoppel)." *Anderson v. Eyman*, 907 N.E.2d 730, 735 (Ohio App. 2009) (citing *Grava v. Parkman Twp.*, 653 N.E.2d 226, 228 (Ohio 1995)). "[A]n existing final judgment or decree between the parties to litigation is conclusive as to all claims which were or might have been litigated in a first lawsuit." *Nat'l Amusements v. Springdale*, 558 N.E.2d 1178, 1180 (Ohio 1990). "[W]here a party is called upon to make good on his cause of action…, he must do so by all the proper means within his control, and if he fails in that

13

respect …, he will not afterward be permitted to deny the correctness of the determination, nor to relitigate the same matters between the same parties." *Id.*

In order to show that *res judicata* bars an action, the defendant must show: (1) a final judgment or decree rendered on the merits by a court of competent jurisdiction; (2) concerning the same claim or cause of action as that now asserted; (3) between the same parties as are in the current action or their "privies." *Eyman*, 907 N.E.2d at 736.

Under Ohio law, an arbitration decision is considered a final judgment or decree and, therefore, claims decided under arbitration are barred by *res judicata*. *See DiPietrantonio v. City of Norwood*, Case No. C-080533, 2009 Ohio App. LEXIS 1893, at *7 (Ohio App. May 15, 2009). Ohio courts "have applied a broad definition to determine whether the relationship between the parties is close enough to invoke the doctrine." *Kirkhart v. Keiper*, 805 N.E.2d 1089, 1092 (Ohio 2004). In Ohio, privity arises between an insured and the insurer by the terms of the contract. *Nationwide Ins. Co. v. Steigerwalt*, 255 N.E.2d 570, 572 (Ohio 1970). Acuity and Weitz are clearly in privity such that this element of the doctrine of *res judicata* is satisfied.

Weitz's claim for additional consulting fees and expenses has already been litigated and awarded during the arbitration. In fact, the Modified Final Award states that the award "is in full settlement of all claims and defenses submitted in this arbitration. All claims and damages not specifically addressed in this Award are denied." (Doc 146-12 at 14). Weitz admits that in the Modified Final Award, the Panel awarded Weitz its "consulting fees, attorneys' fees, travel costs, etc." (*Id.* at ¶¶ 40-42). Thus, to the extent

14

that Weitz seeks consulting fees and expenses in connection with the underlying litigation, which it previously sought and received, these damages are precluded from being sought in this action.

Ohio adheres to the modern Restatement's doctrine of *res judicata*, which "bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *Grava*, 653 N.E.2d at 229. If it is the "same nucleus of operative facts," then it is barred by *res judicata*. *Id*. During the arbitration, the Panel awarded attorney's fees and costs in the amount of $570,854.54, based on the evidence and figures presented to them. Weitz's new claim for consulting fees and expenses is derived from the same nucleus of operative facts. Weitz could have sought the additional costs for consulting fees and expenses, but Weitz did not. Because the claimed damages in this case are based on the same cause of action with the same nucleus of operative facts, Weitz's new claim for damages is barred by *res judicata*.

Therefore, the three-part test used by Ohio courts to determine whether *res judicata* applies has been satisfied. Weitz is precluded from seeking additional consulting fees and expenses above those already awarded by the Arbitration Panel. In sum, Plaintiff's claim for damages for breach of contract (Count II) fails as a matter of law.

## IV.   CONCLUSION

Accordingly, for these reasons, Defendant Acuity's motion for summary judgment (Doc. 151) is **GRANTED**, and Plaintiff's motion for summary judgment against Acuity (Dco. 146) is **DENIED**.  The Clerk shall enter judgment accordingly, whereupon this case is **TERMINATED** on the docket of this Court.

**IT IS SO ORDERED**.

Date:  _____10/31/16_____

_____
Timothy S. Black
United States District Judge